IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| TRUMBULL INSURANCE COMPANY as subrogee for Daniel R. Hryciak, et al. | : | |
| | : | |
| v. | | Civil Action No. DKC 14-3325 |
| | : | |
| COURTYARD MANAGEMENT CORPORATION | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this negligence case is a motion for partial summary judgment filed by Plaintiffs Trumbull Insurance Company, as subrogee for Daniel J. Hryciak, and Daniel R. Hryciak (collectively, "Plaintiffs"). (ECF No. 13). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiffs' motion for partial summary judgment will be denied.

## I. Background

### A. Factual Background

Unless otherwise noted, the following facts are undisputed. Daniel R. Hryciak ("Mr. Hryciak") is employed by Reeds Jewelers, Inc. ("Reeds") as a district supervisor. On August 7, 2013, Mr. Hryciak was a registered guest at the Dulles Marriott Hotel in Virginia, where he attended a business function for Reeds, conducting interviews at a job fair for Reeds's new location. (ECF No. 16-7, at 3, Hryciak depo.). The Dulles Marriott is

operated   by   Defendant   Courtyard   Management   Corporation
("Courtyard"   or   "Defendant").   (ECF   No.   10   ¶   3).   Reeds   was
insured   by   Trumbull   Insurance   Company   for   its   employees'
compensation liabilities.

While   a   guest   at   the   Dulles   Marriott,   Mr.   Hryciak   slipped
and   fell   on   August   7,   2013.   (ECF   No.   1   ¶   5).   Mr.   Hryciak
testified   during   his   deposition   taken   in   January   2015   that   he
was   sitting   at   the   Bistro   in   the   hotel   lobby   doing   paperwork
before   the   incident.   (ECF   No.   16-7,   at   3,   Hryciak   depo.).   In
his   deposition,   Mr.   Hryciak   stated   that   he   left   the   Bistro   area
*twice* – once to go to the restroom and once to go up to his room
to   get   a   brief   that   he   needed.   (*Id.* at 4).   He   stated   that   when
he   initially   got   up   to   go   to   the   restroom,   he   did   not   notice
anything   unusual   about   the   floor   surface.   (*Id.*).   Mr.   Hryciak
explained   the   route   he   took   to   go   to   the   restroom:

> I   came   from   the   table   and   walked
> towards   the   corner   where   I   later   slipped,
> went   down   the   hallway   and   the   bathroom,   I
> believe,   if   I   remember   correctly,   was   down
> there   to   the   left,   I   believe.   I   stay   in   a
> lot   of   hotels,   so   that's   –   but   I   believe
> that's   where   I   was.

He   stated   that   he   walked   down   the   same   hall   where   he   later
slipped both times.

Mr.   Hryciak   stated   in   his   deposition   that   he   did   not
remember   seeing   any   "Wet   Floor"   signs   when   he   walked   to   the
restroom   at   the   end   of   the   hallway,   but   he   recalls   "the   hall

2

being wet all the way down the hall where the pool door is."
(ECF No. 16-7, at 4). He said the floor visibly was wet so he
had to walk around it. He saw a small puddle of two to three
inches which he walked around.

Mr. Hryciak returned to the Bistro area after he went to
the restroom. He stated that the wet area still was there when
he returned to the Bistro. He did not report the wet area,
however, because he "[d]idn't even think of that. It's a usual
occurrence at hotels outside the pool door, in [his]
experience." (*Id.* at 4-5). There are some inconsistencies in
Mr. Hryciak's recollection of the events that led up to his fall
and the actual fall, which will be discussed in the analysis
section.

Mr. Hryciak stated that after he left the Bistro a second
time to go to his hotel room, he fell: "I left my chair, walked
towards the hallway. As soon as I went to turn the corner into
the hall, my feet went out from under me and I fell back and
came down on my right elbow." (ECF No. 16-7, at 5). The
incident report from that day, prepared by the Operations
Manager at the Dulles Marriott, Michael Lizon ("Mr. Lizon"),
indicates that the incident occurred at approximately 2:30 p.m.
in the hotel lobby. Mr. Lizon submitted an affidavit,
explaining:

3

> In my role as Operations Manager, I had the opportunity to review and investigate the facts surrounding Plaintiff Hryciak's claims arising from an alleged incident that occurred at the subject hotel on August 7, 2013. I arrived at the scene of the alleged incident and spoke with Mr. Hryciak and Mr. Robert Kenny and I wrote out an Incident Report (Exhibit A) *wherein I wrote down what they told me.*

(ECF No. 16-5 ¶ 3). The Incident Report provides the following details:

> Was sitting in Bistro chatting w[ith] co[-]worker. Went up to use restroom – when walked around the corner to the hall where restroom is located, guest slipped on wet floor. Wet floor signs was down at the end of the hallway. Floor did not appear wet – more greasy/soapy. Guest in lobby (witness) came over to assist. Mr. Hryciak slipped and fell on arm/elbow. No emergency services needed – may see doctor back home.
>
> Witness – was in lobby – did not see guest fall – ran over – guest was on left side complaining of right arm pain. Witness saw wet floor sign down at the end of hall. Floor was sli[c]k – didn't appear wet (soapy).

(ECF No. 13-3).

As a result of the fall, Mr. Hryciak fractured his right elbow and required surgery. (ECF No. 16-8, at 4). Reeds reported Mr. Hryciak's injury to Trumbull Insurance Company ("Trumbull"), Reeds's insurer for workers' compensation benefits in Maryland and Virginia. (ECF No. 1 ¶ 9). Trumbull paid Mr. Hryciak's medical bills and short term disability claim as

ordered by the Virginia Worker's Compensation Commission in the amount of $46,462.20. (*Id.* ¶ 10). Trumbull sought reimbursement from Defendant for the expenses, but Defendant denied liability.

### B. Procedural Background

Plaintiffs filed a complaint on October 23, 2014, asserting two negligence claims against Courtyard Management Corporation by Mr. Hryciak and Trumbull, as subrogee for Mr. Hryciak. Sometime after discovery commenced, Plaintiffs moved for partial summary judgment as to liability. (ECF No. 13). Defendant opposed the motion (ECF No. 16), and Plaintiffs replied (ECF No. 17).

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure, permits a party to move for summary judgment or partial summary judgment by identifying "each claim or defense — or the *part* of each claim or defense — on which summary judgment is sought." (emphasis added). "[P]artial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication . . . serves the purpose of speeding up litigation by" narrowing the issues for trial to those over which there is a genuine dispute of material fact. *Rotorex Co. v. Kingsbury Corp.,* 42 F.Supp.2d 563, 571 (D.Md. 1999) (internal quotation marks omitted) (noting

that "numerous courts have entertained and decided motions for partial summary judgment addressing particular issues").

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Once a properly supported motion for summary judgment is filed, the nonmoving party is required to make a sufficient showing on an essential element of that party's claim as to which that party would have the burden of proof to avoid summary judgment. *Celotex,* 477 U.S. at 322-23.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence

6

unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (*quoting Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

**III. Analysis**

Both parties rely on Virginia law in their papers. When choosing the applicable substantive law while exercising

diversity jurisdiction, as here, a federal district court applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Regarding tort claims, such as the negligence claims here, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delici*"). Here, the harm happened in Virginia, thus, as the parties recognize, any potential liability is governed by Virginia law.

In Virginia, to recover on a negligence claim, a plaintiff must establish: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; and (3) that this breach proximately caused plaintiff to suffer damages. *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293 (2003). Defendant owed Mr. Hryciak a "duty to exercise ordinary care toward [him] as its invitee upon its premises." *Colonial Stores Inc. v. Pulley*, 203 Va. 535, 537 (1962). This duty of ordinary care requires that Defendant keep:

> the premises in a reasonably safe condition for [his] visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of the unsafe condition if it was unknown to [him], but was, or should have been, known to the defendant.

*Id.* A plaintiff in a premises liability case must "prove the existence of an unsafe or dangerous condition on the premises."

8

*Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 451-52 (4th Cir. 2004) (*citing Kendrick v. Vaz. Inc.*, 244 Va. 380, 385 (1992)). "[T]o hold a property owner liable for injuries caused by a dangerous condition, 'it must be shown that the owner had knowledge of the alleged unsafe condition, or that it had existed for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it.'" *Sutherlin v. Lowe's Home Center, LLC*, Civ. No. 3:14cv368(DJN), 2014 WL 7345893, at *4 (E.D.Va. Dec. 23, 2014) (*quoting Cannon v. Clarke*, 209 Va. 708, 712 (1969)). It is well-established, however, that a plaintiff cannot recover under a negligence theory if "the purported defect of which the plaintiff complains was 'known, visible or obvious' to him." *Freeman v. Case Corp.*, 118 F.3d 1011, 1014 (4th Cir. 1997) (*citing Wood v. Bass Pro Shops, Inc.*, 250 Va. 298, 301 (1995)). Ordinarily, negligence is an issue "to be decided by a fact finder" and should be decided as a matter of law "[o]nly when reasonable minds could not differ." *Kimberlin v. PM Transport, Inc.*, 264 Va. 261, 266 (2002).

The parties do not dispute that Defendant owed Mr. Hryciak, an invitee, the duty to use ordinary care to maintain its premises in a reasonably safe condition. (ECF No. 16, at 4). Plaintiffs' four-page motion for partial summary is sparse, but they appear to argue that the tile floor on which Mr. Hryciak

allegedly slipped had been mopped recently and that Courtyard failed to warn Mr. Hryciak of the allegedly hazardous condition on the premises.  (*See* ECF No. 13-1, at 3).

Plaintiffs cite a February 28, 2014 letter from Cathie Winffel, a Senior Claims Adjuster with Marriott Claims Services, to establish that the tile floor where Mr. Hryciak slipped and fell had been mopped recently by a Courtyard employee:

> Daniel Hryciak was a guest at the Dulles Marriott Town Center Courtyard. *Mr. Hryciak slipped and fell on a recently mopped floor.  Wet floor signs were posted in the lobby.*  We are denying liability for this incident and will not be providing reimbursement of payments made.

(ECF No. 13-2) (emphasis added).  They also cite the Incident Report completed on the date of the injury, which states, *inter alia*, that the guest "slipped on a wet floor.  Wet floor sign was down at the end of the hallway." (ECF No. 13-3).  Defendant contends that the Incident Report written by Mr. Lizon, a Courtyard employee, "is not an admission of liability on behalf of Courtyard because it was not written in the words of a Courtyard employee or representative but, rather, in the words of Mr. Hryciak and any other individual who might have provided information to Mr. Lizon." (ECF No. 16, at 2).  Mr. Lizon submitted an affidavit, in which he confirms that in the Incident Report, he wrote down what Mr. Hryciak and Mr. Robert Kenny, a witness, *told him*, not what he himself observed.  (ECF

No. 16-5 ¶ 3).   Defendant further argues that the February 28, 2014 correspondence from Ms. Winffel is not an admission of liability on behalf of Courtyard because it merely states that the floor where Mr. Hryciak slipped was recently mopped, not that he was injured because the floor was mopped.  (*Id.* at 3).

Putting aside any admissibility issues with the Incident Report and the correspondence from Ms. Winfell, as will be seen, factual inconsistencies on the record preclude summary judgment. Defendant does not deny that the floor where Mr. Hryciak fell had been mopped *at some point* before he fell, but argues that genuine disputes exist as to whether it possessed actual or constructive knowledge of the specific unsafe condition and whether the condition was an open and obvious hazard.[1]  Defendant submits an affidavit from Ms. Winffel, in which she states:

---

[1] Defendant states in its opposition to Plaintiffs' motion for partial summary judgment that Mr. Hryciak was "contributorily negligent in the happening of the subject incident." (ECF No. 16, at 5).  In Virginia, contributory negligence occurs when the plaintiff "fail[s] to act as a reasonable person would have acted for his own safety under the circumstances." *Artrip v. E.E. Berry Equip. Co.*, 240 Va. 354, 358 (1990).  "If the plaintiff was contributorily negligent, then Virginia law bars that plaintiff from recovering in a negligence action if the plaintiff's contributory negligence was a proximate cause of his injury." *Baweja v. Roach*, 24 F.App'x 198, 199 (4th Cir. 2002) (*citing Litchford v. Hancock*, 232 Va. 496, 499 (1987)).  Defendant does not explicitly identify the evidence on which it relies to assert the contributory negligence defense.  Moreover, "contributory negligence and open and obvious dangers are generally jury questions[.]" *Loomis v.*

11

> 4. Based upon my investigation of Mr. Hryciak's claim, I determined that prior to the alleged incident[,] Mr. Gilberto Martinez, who is an employee of the Defendant, had mopped the tile floors near and around where the alleged incident occurred.

(ECF No. 16-4 ¶ 4).  Mr. Lizon similarly indicates in his affidavit that he "determined that earlier the same day of the alleged incident Mr. Gilberto Martinez, an employee of the Defendant in the housekeeping department, had mopped the tile floors near and around where the alleged incident occurred, and that the area was mopped using only a bucket with hot water and a mop.  No soaps or detergents were used that day nor any other day on the tile floors in the area of the alleged incident." (ECF No. 16-5 ¶ 4).

Nothing on the record, however, conclusively establishes *when* the hotel employee mopped the floor in relation to when Mr. Hryciak fell and whether Defendant was aware of the allegedly dangerous condition on the premises which caused Mr. Hryciak to fall.  Ms. Winffelt conducted a recorded phone interview with Mr. Hryciak shortly after the incident on August 12, 2013, in which he stated: "*The floor did not appear to be wet* but it was very slippery as evidenced by, there was a fellow that came over that was a paramedic with a girls' softball team that was

---

*Kroger Ltd. Partnership I*, No. 2:14CV536, 2015 WL 3793751, at *3 (E.D.Va. June 17, 2015).

apparently visiting or in the hotel also and he, as he came over to me, he realized, he actually as he squatted down, slid towards me on the floor. There was, it didn't look wet, but it was slick with something. *I don't know what, and my clothes were not wet when I stood up by the way.*" (ECF No. 16-8, at 2) (emphases added). In his January 28, 2015 deposition, however, Plaintiff changed course, stating that the floor was "wet. It was a slick . . . I don't want to say soapy. It was slick. It was extremely shiny, *and my pants were wet*. The side of my pants, I had a slight wet mark. I didn't realize that at the moment until I got up." (ECF No. 16-7, at 7) (emphasis added). Mr. Lizon, on the other hand, states that he "went to the area of the floor where Mr. Hryciak said that he fell and [] touched the floor and found that it was not slick or slippery or wet." (ECF No. 16-5 ¶ 4).

Moreover, the record contains conflicting accounts as to the condition of the tile floor from when Mr. Hryciak first walked down the hallway after he left the Bistro to use the restroom to the time he walked to the elevator when he slipped. Specifically, in his recorded audio statement, Mr. Hryciak stated that he walked down the hall to use the restroom and the floor "didn't look to be wet at all." (ECF No. 16-8, at 3). He stated:

> I had just walked down that hallway not five
> minutes before and it was you know, it
> wasn't slippery at all, well maybe ten
> minutes before, it wasn't slippery at all.

(*Id.*).   In his deposition, however, Mr. Hryciak stated that when
he first walked down the hall to the restroom, the floor "was
visibly wet so that [he] had to walk around it." (ECF No. 17-1,
at 24).   He stated that he saw a small puddle, two to three
inches in diameter, which he did not report to anybody in the
hotel.   (*Id.* at 25).   Mr. Hryciak testified in his deposition
that he had to make the same turn when he walked to the elevator
(when he slipped) as when he went to the restroom.[2]   (*Id.* at 29-
30).

On the recorded call, Although Mr. Hryciak indicated during the recorded call
that five to ten minutes passed from his first walk to the
restroom to his second walk to the elevator when he fell, he
stated in his deposition that fifteen to twenty minutes passed
between his return from the restroom and his decision to leave
the Bistro to go to the hotel room.   (*Id.* at 26).   As Defendant
argues, "there is an issue of fact as to whether 5 to 10 minutes
or 15 to 20 minutes passed between the first and second walk,
and whether there was sufficient opportunity for a Courtyard
employee to have received notice of a dangerous, slippery

---

[2]   Mr. Hryciak indicated that both the restroom and the
elevator were past the pool entrance.   (ECF No. 17-1, at 30).

condition upon the floor, and whether Courtyard had a reasonable opportunity to cure the allegedly dangerous condition." (ECF No. 16, at 15). Mr. Hryciak did not see any mopping or cleaning of the floor area between the time he returned from the restroom and when he got up again. (ECF No. 17-1, at 27). Based on the foregoing, there are genuine disputes as to whether a hazardous condition existed on the premises of which Defendant was or should have been aware, and whether it was open and obvious to Mr. Hryciak.

Defendant also argues that even if a hazardous condition existed of which it was or should have been aware, there is at least a genuine dispute as to whether it provided adequate warning by placing three "Wet Floor" signs. Defendant submits a floorplan of the Marriott Hotel, which shows the location where Mr. Hryciak fell and where the three "Wet Floor" signs purportedly were placed. (ECF No. 16-4, at 3). Mr. Lizon stated in his affidavit that three "Wet Floor" signs were placed in locations that were visible from the area where the alleged incident occurred. (ECF No. 16-5 ¶ 4); (see also ECF No. 16-4 ¶ 5, Winffel Aff. ("Further, I determined that after the floors were mopped but before the alleged incident occurred, three "Wet Floor" signs were placed in locations that were visible from the area where the alleged incident occurred.)). Mr. Hryciak, on

the other hand, provided the following deposition testimony as
to his recollection of the "Wet Floor" signs:

> Q: Do you recall at any time th[e] day of
> the incident seeing any wet floor signs or
> any indication to you that the floors were
> wet or had been wet?
>
> A: *In that area, no, not in that immediate
> area.* I believe, again, this could be -- I
> could be mixing this up with other visits.
> At the far end of the hall at times I have
> seen wet floor signs and that is to the
> entrance to the pool. *The area that I fell
> in, there was no sign and I would say -- if
> there was a sign at the pool door, that
> would have to be, and I'm estimating, maybe
> 50, 60 feet down the hallway.*
>
> Q: But you're not sure whether there were
> signs at the time that you fell?
>
> A: *I'm sure there were no signs where I fell
> in that immediate vicinity*, no signs to
> indicate there was a wet floor where I was
> walking.

(ECF No. 17-1, at 41-42) (emphases added). Similarly, he stated
during the recorded call that there was a wet floor sign "all
the way down the end of the hall which [he] didn't notice
[until] we took a picture, all the way down at the end of the
hall, I guess down by where the, it was on the rug down by where
I take the door to go into the pool area." (ECF No. 16-8, at
4).

    Whether the "Wet Floor" signs were visible is unclear from
the floorplan and the photographs on the record.  Mr. Hryciak
explained that he slipped on the tile floor as he "went to turn

the corner into the hall." (ECF No. 17-1, at 28). It is not clear whether Mr. Hryciak would have seen the "Wet Floor" sign down the corridor as he rounded the corner to the right or that the "Wet Floor" sign by the front desk (as indicated in the floor plan) would have put him on notice of the condition of the floor around the corner on the way to the elevator. The record also does not establish *when* the warning signs were placed.

Based on the foregoing, Plaintiffs' motion for partial summary judgment as to liability will be denied.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for partial summary judgment will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

17